[No. C004309. Third Dist. Feb. 14, 1990.]

UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff and Respondent, v.
HAROLD R. LILLY et al., Defendants and Appellants.

[Opinion certified for partial publication.[1]]

---

[1] The Reporter of Decisions is directed to publish the opinion except for part IV of the Discussion.

## COUNSEL

Laurie, Maloney & Wheatley, Weintraub, Genshlea, Hardy, Erich & Brown and Nelson K. Brooks for Defendants and Appellants.

Borton, Petrini & Conron, Nicholas K. Lowe and Kristen Preston for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This declaratory relief action, brought by United Services Automobile Association (USAA) against the heirs of Anita Lilly (heirs), tenders the question whether the "each person" or the "each accident" provision of a USAA policy of automobile liability insurance limits its liability for damages for which its insured may become legally responsible in the wrongful death action brought by the heirs. The trial court entered judgment that recovery is limited to $100,000 by the "each person" provision. The heirs appeal, claiming that the $300,000 "each accident" clause provides the correct limit.

We will affirm the judgment. In the published portion of this opinion we read the policy as covering damages for a wrongful death, resulting from an automobile accident, for which USAA's insured is legally responsible. Since damages for such a death are not measured by bodily injury to the heirs but by the economic consequences of the fatal bodily injury to their relative we conclude that USAA's liability is governed by the "each person" clause which limits "damages for bodily injury sustained by any one person in any one auto accident" to $100,000.

### FACTS

The facts are few and undisputed. USAA's insured was involved in an automobile accident in which Harold R. Lilly was injured and his wife, Anita, was killed. Harold Lilly filed a personal injury action and her heirs filed a wrongful death action against the insured. USAA filed this action for

declaratory relief, naming the heirs as defendants, claiming that the policy's bodily injury liability limit of $100,000 for "each person" is applicable in each of the two actions. The $100,000 limit, applied to Harold Lilly's personal injury action, is not at issue. Anita Lilly's heirs claim the policy's $300,000 "each accident" bodily injury liability limitation is the applicable provision of the contract. More precisely they claim the maximum coverage is $300,000 minus the amount paid in the Harold Lilly personal injury action. USAA claims that its maximum liabilities are $100,000 in the personal injury action and $100,000 in the wrongful death action.

## DISCUSSION

### I

■ The heirs ask us to employ the familiar rule of insurance contract construction that an ambiguity in an insurance policy is to be construed in favor of coverage if semantically permissible. (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309], quoting from *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].) The necessary condition for invocation of this rule is a material ambiguity in the policy language, i.e., a "material uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 177 Cal.App.3d 855, 859 [223 Cal.Rptr. 246], fn. omitted.)

■ "The question of meaning is framed by the competing claims of the parties regarding the application of the policy language to the material facts of the case. [Citation.]" (*National Auto. & Casualty Ins. Co.* v. *Contreras* (1987) 193 Cal.App.3d 831, 836 [238 Cal.Rptr. 627].) They must be "tested against the permissible uses of the language upon which the claims are founded, for the meaning of language is to be found in its usage and the occasion of a usage is an application of the language to particular circumstances." (*Ibid.*) In applying this measure we are directed to read the policy "as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves." (*Travelers Indemnity Co.* v. *Swearinger* (1985) 169 Cal.App.3d 779, 784 [214 Cal.Rptr. 383].)

### II

USAA contracted with the insured to "pay damages for bodily injury . . . for which any covered person becomes legally responsible because of an auto accident." The policy does not explicitly cover wrongful death

actions. Nor does it define "bodily injury." Rather it covers damages "for bodily injury" for which the insured becomes "legally responsible because of an auto accident." The parties assume that this provision applies to damages recoverable in a wrongful death action and focus their claims upon the policy provisions which limit the amounts payable for such damages. The assumption conceals two different constructions by which the policy is read to encompass the claims of the heirs.

The first, assumed by USAA, is that "bodily injury" includes death, the injury suffered by Anita Lilly. In that case the argument is that USAA has become liable for whatever damages its insured has become "legally responsible" because of the death of Anita Lilly, hence for whatever damages are recoverable in a wrongful death action. The second, advanced by the heirs is that "bodily injury" includes the injuries (damages) suffered *by them*. In that case the policy applies because USAA's insured is legally responsible for *that* kind of bodily injury.

The term "bodily injury" must be read "as employing [its] ordinary usages . . . as they might be understood by the layman in the context of the policy and the purposes which it serves." (*Travelers Indemnity Co.*, *supra*, 169 Cal.App.3d at p. 784.) Applying that measure to a policy of automobile liability insurance, it would belie the reasonable understandings of its holders if it protected them against damages for all forms of bodily injury to a victim of an automobile accident except the most severe, death.[2] The measure, however, rules out classifying the *kind* of damages recoverable for wrongful death as damages "for bodily injury." Such damages have been held to include "pecuniary losses," not only losses of an ascertainable economic value such as loss of household services or earning capacity but also loss of the decedent's "society, comfort, care and protection." (*Krouse* v. *Graham* (1977) 19 Cal.3d 59, 68 [137 Cal.Rptr. 863, 562 P.2d 1022].)[3] Such damages do not sound in "bodily injury." That is to say, a policy holder would not ordinarily and reasonably understand the term "bodily injury" to include a loss of household services or earning

[2]That construction is compelled by statute. Every driver or owner of an automobile must carry liability insurance or have the ability to respond to damages (Veh. Code, § 16020) for the death of a person in an accident (Veh. Code, § 16056). That circumstance also requires that we read the language of the USAA policy in compliance with the statutory mandate. Moreover, Insurance Code section 11580.06, subdivision (c) [part of article 2, chapter 1 of part 3] relating to "Actions on Policies Containing Liability Provisions," applicable here, reasonably defines "bodily injury" as "including death resulting therefrom." We note that 3 California Insurance Law & Practice (1989 rev. ed.) section 50.05[2], at page 50-12, notes that "Bodily injury [is] defined in most policies in accordance with the Insurance Code [section 11580.06(c)] definition . . . . This language is important because it gives the insured protection against wrongful death claims as well as personal injury lawsuits." (Fn. omitted.)

[3]Damages for mental and emotional distress, including grief and sorrow are not recoverable in a wrongful death action. (*Krouse, supra,* at p. 72.)

capacity or the loss of the "society, comfort, care and protection" of the deceased. For that reason we rule out any construction of the policy which reads "bodily injury" as including an injury for which the heirs might recover in a wrongful death action.

Thus, we read the coverage provision to encompass a wrongful death action, by substitution of "death" for "bodily injury" so that it reads that USAA will "pay damages for [*death*] . . . for which any covered person becomes legally responsible because of an auto accident." This readily encompasses damages for wrongful death[4] because the "damages" for which the insured becomes "legally responsible" are the damages recoverable in a wrongful death action. However, since such damages are not damages "*for* bodily injury" but damages derivative of the insured's legal responsibility for the fatal bodily injury, the USAA policy does not cover the heirs on the theory that *they* suffered bodily injury. These conclusions are of semantic consequence in reading the provisions which limit USAA's liability for payments within the coverage provision.

### III

The payments within the coverage provision are limited by two provisions of the policy. The amount payable for "bodily injury" is limited for "each person" to $100,000 and for "each accident" to $300,000.[5] The application of these limits is explained in the policy as follows. "The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person', the limit of liability shown in the Declarations for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. . . . This is the most we will pay regardless of the number of: . . . [¶] 2. Claims made . . . ."

The "each person" provision provides that the maximum amount that USAA will pay for "all damages for bodily injury sustained by any one person in any one auto accident" is $100,000. The heirs argue that each of them is a person sustaining bodily injury as a result of the accident because they are entitled to bring a wrongful death action pursuant to Code of Civil

---

[4] Code of Civil Procedure section 377 provides in pertinent part: "When the death of a person is caused by the wrongful act or neglect of another, his or her heirs . . . may maintain an action for damages against the person causing the death . . . . [S]uch damages may be given as under all the circumstances of the case, may be just, . . . ."

[5] The policy also provides a $100,000 property damage limitation for each accident. This provision has not been tendered as a source of liability.

Procedure section 377 based upon their own independent "pecuniary loss" arising from the death of their relative in the accident. (See *Earley* v. *Pacific Electric Railway Company* (1917) 176 Cal. 79, 81 [167 P. 513]; *Carr* v. *Duncan* (1949) 90 Cal.App.2d 282, 284 [202 P.2d 855].)

The heirs necessarily construe the words "any one person" as applying to the person suffering the loss (i.e., the heir), rather than to the person directly injured or killed in the accident (Anita Lilly), and necessarily construe "bodily injury" as inclusive of *their* wrongful death injuries. For reasons partly assessed above this construction is untenable.

The heirs may recover under the policy only insofar as it covers *their* injuries. But their injuries are included within the policy coverage only because they are founded upon the *legal responsibility* of USAA's insured for the wrongful death of their relative resulting from the accident. For the heirs to be entitled to any recovery under the policy the term "death" must be read into the policy such that the $100,000 maximum bodily injury limitation is applicable to "damages for [i.e., arising from] bodily injury [i.e., death] sustained by any one person *in* any one auto accident." The person so injured *in* the accident was Anita Lilly. Thus, the precondition for recovery under the policy also provides for a limitation upon the recovery; the maximum recovery the heirs collectively may recover for their damages resulting from the death of Anita Lilly in the accident is the $100,000 provided in the "each person" provision.

The heirs' reliance on *Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 [212 Cal.Rptr. 852] is misplaced. In *Abellon* a husband was injured in an automobile accident. He brought an action for his injuries. His wife, who was not in the accident, brought an action for loss of consortium resulting from the injuries to her husband in the accident. The policy language provided: " '1. The most we will pay for all *damages resulting from bodily injury to any one person caused by any one accident* is the limit of Bodily Injury Liability shown in this endorsement for "each person" [$250,000]. 2. Subject to the limit for "each person," the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for "each accident" [$500,000].' " (Italics added.) Hartford argued that under the per person provision applied it was liable for a maximum of $250,000 on the theory that the wife's loss of consortium was derivative of the husband's injuries in the accident. The court disagreed.

It held that the wife's claim was subject to the "per occurrence" limitation. That limitation happened to be twice the "each person" limitation. Its holding is bottomed on the reasoning that she also was a person who could

separately recover "damages resulting from bodily injury . . . caused by [the] accident" on the theory that her damages, compensable emotional distress—a bodily injury, were caused by the accident. Unlike the contract at issue here, the *Abellon* contract did not require that the bodily injury subject to the "each person" limitation be suffered by a person *in* the accident. As subsequently explained by the same court, "In *Abellon,* we held the policy there extended coverage to ' "all damages resulting from *bodily injury* caused by any one accident." ' [Citation omitted.] Reasoning the [each person] provision did not specifically state that damages must result from bodily injury to one physically present at the accident scene, we held coverage extended to all persons damaged as 'a result of bodily injuries sustained in the accident.' " (*Interinsurance Exchange* v. *Campbell* (1986) 187 Cal.App.3d 242, 246 [232 Cal.Rptr. 27].)

*Westfield Ins. Co* v. *DeSimone* (1988) 201 Cal.App.3d 598 [247 Cal.Rptr. 291] said that *Abellon* ruled that "the wife's loss of consortium injury could be an independent bodily injury under the insurance policy, if the loss of consortium were accompanied by *emotional distress which resulted in bodily injury.* " (201 Cal.App.3d at p. 603, original italics.) In *Westfield,* a wrongful death case, the policy language, similar to that here, provided that $100,000 was the insurance company's " 'maximum limit of liability for all damages for bodily injury sustained by any one person *in* any one auto accident . . . regardless of the number of . . . Claims made . . . .' " (*Id.* at p. 600, italics deleted and italics added.) And like this case, the decedent's heirs relied on the policy's "per occurrence" limitation. Noting that " 'California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action' (*Krouse* v. *Graham* (1977) 19 Cal.3d 59, 72)," *Westfield* asserted that the rationale in *Abellon* which led to the court's ruling that the wife suffered "bodily injury" for purposes of the policy was not applicable to the wrongful death action before it. (*Westfield, supra,* at p. 603.) The *Westfield* court rejected arguments paralleling those made here and held that each heir did not have a separate and independent claim for bodily injury under the policy. We agree with that holding.[6]

---

[6] Other cases which have rejected the claim of heirs in a wrongful death action that they were separately injured because of the death of the decedent and therefore can claim under the policy's multiple limits have involved the construction of different policy language. (See *Vanguard Ins. Co.* v. *Schabatka* (1975) 46 Cal.App.3d 887, 893 [120 Cal.Rptr. 614] [policy's "each person" limitation is the "limit of . . . liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident"]; *Valdez* v. *Interinsurance Exchange* (1966) 246 Cal.App.2d 1, 3 [54 Cal.Rptr. 906] ["each person" limitation is the " 'limit of . . . liability for all damages including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one . . . accident' "].) Loss of consortium cases which have included similar language have also held that the "per person" limitation is applicable. (*United Services Auto-*

We conclude that the extent of USAA's liability to the heirs arising from the death of Anita Lilly is $100,000.

IV*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

Marler, J., and Davis, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 2, 1990.

---

*mobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957 [135 Cal.Rptr. 34]; *Perkins* v. *Fireman's Fund. Indemnity Co.* (1941) 44 Cal.App.2d 427 [112 P.2d 670].) In each of these cases, the inclusion of the clause "including damages of care and loss of services" was found to be significant in the determination that the "each person" limitation was applicable. (See also *Hauser* v. *State Farm Mut. Auto. Ins. Co.* (1988) 205 Cal.App.3d 843, 845 [252 Cal.Rptr. 569] ["per person" limitation applicable to husband's personal injury action and wife's loss of consortium action where policy defined "bodily injury to one person" as including "all injury and damages to others resulting from this *bodily injury*" (italics in original)].)

\* See footnote 1, *ante,* page 1396.