Filed 11/17/14  North American Specialty Ins. Co. v. Sutton CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SUSAN SUTTON, et al., <br><br> Defendants and Appellants. | B249882 <br><br> (Los Angeles County <br> Super. Ct. No. PC052179) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Farrell, Judge.  Affirmed.

Katzman, Lampert & McClune, John D. McClune and Patrick J. Gallagher (pro hac vice); Kreindler & Kreindler, Stuart R. Fraenkel and Nicole C. Andersen for Defendants and Appellants.

The Morse Law Group and Jonathan S. Morse for Plaintiff and Respondent.

_____

## INTRODUCTION

After a small plane crash resulted in the deaths of the two passengers on board, a dispute arose between the personal representatives of the estates of these decedents (the decedents' parents) and the insurance company that had issued the policy in effect at the time. According to the insurer, the policy provided liability coverage for claims arising out of the accident—subject to a limit of $100,000 per passenger and an aggregate liability limit of $1 million. The claimants contended the $100,000 per passenger limit did not apply to their wrongful death claims which were subject only to the liability limit of $1 million. After stipulating to certain facts, the insurer and the personal representatives of the estates filed cross-motions for summary judgment based on their conflicting constructions of the policy language. The trial court agreed with the insurer's interpretation of the policy and entered judgment in its favor. The personal representatives appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Aircraft Insurance Policy.

North American Specialty Insurance Company (North American) issued an aircraft policy to Dale Smet in 2010.

On the Declarations page of the Policy, "Liability Coverages" were set out as follows: "A) Bodily Injury (Excluding Occupants) and B) Damage to Property and C) Bodily Injury to Passengers (Excluding Crew). Combined Single Limit $1[ million] Each Occurrence but C) Limited to $100,000 Each Passenger, Each Occurrence." The Declarations page further stated: "The limit of [North American]'s liability against each such coverage shall be as stated herein, subject to all terms of this Policy having reference thereto."

On the first page of the Policy itself, the insuring agreement provided that, subject to the policy's limits, North American would pay on behalf of its insured "all sums which the Insured shall become legally obligated to pay as compensation for damage because of

2

A) Bodily Injury sustained by any person, excluding all occupants of the aircraft, and excluding claims which originate from any injury to occupants of the aircraft, such as loss of care or services, or negligent infliction of emotional distress; [(Coverage A)]

B) Damage to property;

C) Bodily Injury sustained by any passenger, excluding the pilot and crew and all persons working upon the aircraft; [(Coverage C)]

Caused by an occurrence arising out of the ownership, or use of the aircraft set out in the Policy. . . ." (Policy emphasis omitted.)

2. *The Complaint and Cross-Complaint for Declaratory Relief.*

In December 2011, North American filed a complaint for declaratory relief, naming as defendants Susan Sutton (individually and as personal representative of her daughter Rachel Ann Sutton's estate), Judy Heikkenen (individually and as personal representative of her daughter Carla Heikkenen's estate) and Roger Heikkenen (Carla Heikkenen's father).

According to the complaint, on October 21, 2010, Dale Smet piloted a Cirrus model SR-22 airplane, carrying Rachel Ann Sutton and Carla Heikkenen as passengers, when the plane crashed in Agua Dulce, resulting in the deaths of all three individuals on board.[1] At the time of this accident, North American insured the aircraft pursuant to the insurance policy attached as an exhibit to the complaint. Thereafter, Susan Sutton and Judy Heikkenen, as personal representatives of their respective daughters' estates, filed creditors' claims against the pilot Smet's estate—each in the amount of $10 million.

North American further alleged it had entered into a settlement agreement with Susan Sutton, Judy Heikkenen and Roger Heikkenen (without conceding the liability of North American's insured), and paid Sutton and Judy Heikkenen, as personal representatives of their daughters' estates, $100,000 each, with any further liability under

---

[1] According to the record, Smet (the pilot) was Rachel Sutton's father.

3

North American's policy to be determined through the declaratory relief action. The settlement agreement was also attached as an exhibit to North American's complaint.

Susan Sutton and Judy Heikkenen, individually and as personal representatives of their daughters' estates, filed an answer and cross-complaint. (Unless otherwise specified hereafter, we refer to Susan Sutton and Judy Heikkenen collectively as "Claimants.") In their pleading, Claimants acknowledged it was their contention the $100,000 per passenger liability limit in the policy was inapplicable to the claims of non-passenger survivors for wrongful death arising out of the accident, and further asserted the liability limit under the policy is $1 million per occurrence or, in the alternative, $100,000 for each non-passenger survivor of the Claimants' decedents.[2]

North American filed an answer to the Claimants' cross-complaint.

3. *The Summary Judgment Motions and Stipulated Facts.*

Both sides then filed opposing motions for summary judgment (followed by opposition and reply memoranda). North American argued that the Claimants were entitled to recover under "Coverage C" for "Passenger Bodily Injury" which was subject to the $100,000 per passenger limit. The Claimants maintained that *they* had suffered their own bodily injuries as "non-passenger survivors." As a result, the Claimants argued, they were entitled to recover under "Coverage A" for "Bodily Injury (Excluding Occupants)"—subject only to the $1 million per occurrence policy limit. As supporting evidence, both separate statements of material fact cited to portions of North American's Policy as well as the following stipulated facts:

"1. On October 21, 2010, and prior thereto, Ovation Management, Inc. was the registered owner of that Cirrus SR22 aircraft, Federal Aviation Registration Number N427MC (the 'Aircraft').

"2. On or about January 7, 2010[,] North American . . . through its designated agent, London Aviation Underwriters, Inc. ('LAU')[,] issued and delivered to Ovation

---

[2]    According to the Claimants' answer and cross-complaint, Judy Heikkenen and Roger Heikkenen are divorced, and each of the decedents had additional surviving heirs.

4

Management, Inc. and Dale Smet a Sixty Day Binder of Aircraft Insurance bearing an assigned policy number BZ100009886-00 (the 'Binder').  A genuine copy of the Binder is attached as the last two pages of Exhibit A attached to plaintiff's complaint in this action.

"3.  On or about January 21, 2011[sic, 2010,] LAU received an Application for Aviation Policy from Ovation Management, Inc. and an Application for Aviation Policy from Dale Smet (collectively the 'Applications').

"4.  On or about February 1, 2010[, North American], through its designated agent LAU, issued and delivered to Ovation Management, Inc. and Dale Smet a Policy of Aircraft Insurance, Policy No. BZ100009886-00 (the 'Policy') consisting of the Declarations and those Forms as listed on the 'Forms Attached' page following the Declarations.  Exhibit A attached to plaintiff's complaint in this action, excluding the last three pages, is a genuine copy of the Policy.  No changes or endorsements to the Policy were issued thereafter, and the Policy as issued remained in effect through and including the time of the Accident of October 21, 2010 as referenced herein.

"5.  On October 21, 2010[,] Dale J. Smet, also known as Dale Smet, met the Special Conditions set forth in the Policy as a requirement to obtain liability coverage, including passenger liability, while he was piloting the Aircraft.

"6.  On October 21, 2010[,] the Aircraft, while being piloted by Dale Smet, crashed onto the property of Yves and Marie Richarz in Agua Dulce, California, hereafter the 'Accident'.

"7.  At the time of the Accident[,] Carla Heikk[e]nen and Rachel Ann Sutton were passengers aboard the Aircraft.

"8.  Dale Smet, Carla Heikk[e]nen and Rachel Ann Sutton received fatal injuries as a result of the Accident.  There were no other occupants aboard the Aircraft at the time of the Accident.

5

"9.   Roger Heikk[e]nen and Judy Heikk[e]nen are the natural parents of Carla Heikk[e]nen.  Judy Heikk[e]nen is the Personal Representative of the Estate of Carla Heikk[e]nen.

"10.   Susan Sutton is the natural mother of Rachel Ann Sutton and the Personal Representative of the Estate of Rachel Ann Sutton.

"11.   Dale Smet was the natural father of Rachel Ann Sutton.

"12.   Neither Susan Sutton nor Judy Heikk[e]nen nor Roger Heikk[e]nen were in the state of California when the Accident occurred.

"13.   Susan Sutton, Judy Heikk[e]nen and Roger Heikk[e]nen first learned about the Accident after it had occurred.

"14.   In December 2011[, North American] entered into a written agreement (the 'Agreement') with Judy Heikk[e]nen, individually and as Personal Representative of the Estate of Carla Heikk[e]nen, and Susan Sutton, individually and as Personal Representative of the Estate of Rachel Ann Sutton.  A genuine copy of the Agreement is attached to the Complaint in this action as Exhibit B.

"15.   Pursuant to the terms of the Agreement (Exhibit B)[, North American] has paid $100,000 to Judy Heikk[e]nen as Personal Representative of the Estate of Carla Heikkenen and $100,000 to Susan Sutton as Personal Representative of the Estate of Rachel Ann Sutton.

"16.   An actual controversy exists between [North American] on the one hand and Susan Sutton, Judy Heikk[e]nen and Roger Heikk[e]nen on the other hand concerning their rights and responsibilities under the Policy.  Briefly summarized, by way of description and without prejudice to other legal arguments, [North American] contends that the Policy provides liability coverage for the claims arising out of the Accident subject to a liability limit of [$1 million] per occurrence with a sub[-]limit of [$100,000] per passenger; . . . Judy Heikk[e]nen, Roger Heikk[e]nen and Susan Sutton dispute this as to the passenger sub[-]limit, and contend that the Policy's each passenger sub[-]limit does not apply to their claims arising from wrongful death, and that there is coverage in the

amount of [$1 million] per occurrence or, in the alternative, [$100,000] per occurrence for each non-passenger survivor."[3]

4. *The Trial Court's Decision.*

After considering the parties' papers and oral argument, the trial court (John P. Farrell) granted North American's motion for summary judgment, denied the Claimants' summary judgment motion and entered declaratory judgment, "binding on all parties herein, as well as their successors, heirs and assigns, and establishing the following:

"The . . . Policy issued by North American . . . which is at issue in this action, policy number BZ10009886-00 (the 'Policy') provides liability coverage for the aircraft accident of October 21, 2010 (the 'Accident') subject to a liability limit of $1[ million] each occurrence and a sub[-]limit of $100,000 each passenger each occurrence.

"The liability sub[-]limit of $100,000 each passenger each occurrence set forth in the Policy limits the amounts payable by [North American] for the death of Carla Heikkenen to $100,000, regardless of the identity or number of claimants. That amount has been paid to Judy Heikkenen, as Personal Representative of the Estate of Carla Heikkenen, and [North American] has no obligation to make any further payments to any person or entity on account of the death of Carla Heikkenen.

"The liability sub[-]limit of $100,000 each passenger each occurrence set forth in the Policy limits the amounts payable by [North American] for the death of Rachel Sutton to $100,000, regardless of the identity or number of claimants. That amount has been paid to Susan Sutton, as Personal Representative of the Estate of Rachel Sutton, and [North American] has no obligation to make any further payments to any person or entity on account of the death of Rachel Sutton. . . ."

The Claimants appeal.

---

[3] In addition (without citing any supporting evidence), the Claimants asserted as undisputed material fact that Rachel Ann Sutton and Carla Heikkenen were residents of and had domiciles in Michigan. (The Claimants are represented by out-of-state counsel located in Michigan as well as local (Los Angeles) counsel.)

*DISCUSSION*

*1. Standard of Review.*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's grant of summary judgment de novo. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.) The interpretation of an insurance policy, like other contracts, is a question of law to be determined by the court. (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 (*Haynes*); *Waller v. Truck Ins. Exch. Ins.* (1995) 11 Cal.4th 1, 18 (*Waller*).)

*2. The Trial Court Properly Granted North American's Motion for Summary Judgment as the Claimants' Recovery Is Confined to Coverage C and Subject to its $100,000 per Passenger Limit.*

The Claimants argue the trial court erred in granting North American's summary judgment motion because the court was presented with conflicting interpretations of the Policy but failed to resolve the resulting ambiguity against the insurer such that they were entitled to the full $1 million policy limit. In the Claimants' view, the Policy was ambiguous because North American never defined the term "bodily injury"—the "most critical term in its liability coverage"— in the Policy's definitions section, but in the Policy's exclusionary language, "identified only certain types of derivative mental anguish damages excluded as bodily injury, meaning other forms of mental anguish damages are not excluded.[4] The term, 'bodily injury' is easily read or defined to

---

[4]     In the Claimants' view, because the policy language of Coverage A "exclud[es] only bodily injury 'claims which originate from any injury to occupants of the aircraft, *such as loss of care or services or negligent infliction of emotional distress*[, t]his language clarifies that mental anguish is considered a bodily injury." (Original emphasis.) Citing *Employers Cas. Ins. Co. v. Foust* (1972) 29 Cal.App.3d 382, 387 (*Foust*), the Claimants urge "That the policy only excludes two such claims ('loss of care or services' and 'negligent infliction of emotional distress') should not foreclose other

8

include mental anguish other than those specifically listed. At the very worst, there is an ambiguity." We disagree.

A. *"Clear and Explicit" Policy Language Governs*.

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id*., § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id*., § 1644), controls judicial interpretation. (*Id*., § 1638.)'" (*Waller, supra,* 11 Cal.4th at p. 18; *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390, citations and internal quotations omitted ["If contractual language is clear and explicit, it governs"].)

"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Waller, supra,* 11 Cal.4th at pp. 18-19.) "'An insurance company has the right to limit coverage of a policy issued by it and when it had done so, the plain language of the limitation must be respected.'" (*National Insurance Underwriters v. Carter* (1976) 17 Cal.3d 380, 386, citation omitted.)

B. *Coverage A Does Not Apply to these Claims.*

Looking to the plain language of the Policy itself, Coverage A (subject only to the $1 million Policy limit) applies to "all sums which the Insured shall become legally obligated to pay as compensation for damage because of [¶] Bodily Injury sustained by

---

claims." (Emphasis omitted.) As we explain in the text, the Claimants have simply misread *Foust*, and it contradicts rather than supports their argument.

any person, *excluding all occupants of the aircraft, and excluding claims which originate from any injury to occupants of the aircraft,* such as loss of care or services, or negligent infliction of emotional distress . . . [c]aused by an occurrence arising out of the ownership, or use of the aircraft set out in the Policy. . . ." (Italics added.) Coverage C (subject to the $100,000 per passenger limit) applies to "all sums which the Insured shall become legally obligated to pay as compensation for damage because of . . . Bodily Injury *sustained by any passenger*, excluding the pilot and crew and all persons working upon the aircraft[ c]aused by an occurrence arising out of the ownership, or use of the aircraft set out in the Policy. . . ." (Italics added.)

Given this policy language, the question of whether the Claimants were entitled to the full $1 million policy limit as they contend turns on whether Coverage A (subject only to the $1 million limit) or Coverage C (subject to the $100,000 per passenger sub-limit) applies, rather than any possible ambiguity in the meaning of the term "bodily injury." As our Supreme Court stated in *Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854 (*Bay Cities*), "Of course, in an appropriate case, the absence of a policy definition, though perhaps not dispositive, might weigh, even strongly, in favor of finding an ambiguity, for example, when the term in question has no generally accepted meaning outside the context of the policy itself. The absence from a policy of a definition of a word or phrase does not *by itself*, however, necessarily create an ambiguity. [¶] The proper and settled approach is more refined." (*Id.* at p. 867, original italics; *ibid.* ["There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application"].)

In this policy, the obvious distinction between Coverage A and Coverage C is not whether bodily injury is covered; *both* categories of coverage refer to bodily injury. Instead, the distinction set out by the Policy language itself is whether bodily injury is sustained by "any passenger" (Coverage C) or "any person, excluding all occupants of the aircraft" (and excluding claims which originate from any injury to occupants of the

10

aircraft) (Coverage A).[5]  In other words, the Policy provides *coverage* for "all sums which the Insured shall become legally obligated to pay as compensation for damage because of . . . Bodily Injury . . . [ c]aused by an occurrence arising out of the ownership, or use of the aircraft set out in the Policy. . ." for both categories of persons but, for purposes of establishing the applicable *limit* of coverage, the Policy distinguishes between bodily injury sustained by anyone *inside* (or entering or exiting) the aircraft and such injury sustained by anyone *outside* the aircraft.  Stated another way, subject only to the $1 million policy limit, Coverage A provides bodily injury coverage for "any person" but *excludes* from that coverage "all occupants of the aircraft, and exclud[es] claims which originate from any injury to occupants of the aircraft"; then, subject to a $100,000 per passenger sub-limit, Coverage C provides limited coverage for some but not all of the occupants excluded under Coverage A (passengers, but not the pilot or crew).

According to the plain policy language, not only is "compensation for damage because of . . . Bodily Injury sustained by . . . all *occupants* of the aircraft" expressly excluded from Coverage A, but so too are all "*claims which originate from any injury to occupants of the aircraft*, such as loss of care or services, or negligent infliction of emotional distress. . . ."  (Italics added.)  In arguing that "[i]t is clear and indisputable that the non-passenger survivors [Claimants] suffered bodily injuries" as "non-passenger survivors" they specifically acknowledge they suffered damages "*as a result of the death*[*s*] *of their decedents*."  (Italics added.)  Consequently, in interpreting this policy provision, and giving its words their ordinary meaning (*Haynes, supra,* 32 Cal.4th at p. 1204), we can only conclude that, regardless of whether the mental anguish the Claimants suffered is properly characterized as "bodily injury," because the Claimants' "claims . . . originate from . . . injury to occupants of the aircraft," they are necessarily excluded from Coverage A.  (*Powerine, supra,* 37 Cal.4th at pp. 390-391 [neither

---

5       The Policy defines "passenger" to mean "any person *in or entering the aircraft* for the purpose of riding therein *or alighting therefrom* following a flight or attempted flight therein."  (Italics added.)

11

disagreement concerning the meaning of a phrase nor the fact a word or phrase isolated from its context is susceptible of more than one meaning makes a term in an insurance policy ambiguous]; *Bay Cities, supra,* 5 Cal.4th at p. 868, original italics ["The proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case"].)

Citing *Employers Cas. Ins. Co. v. Foust* (1972) 29 Cal.App.3d 382, 387 (*Foust*), the Claimants argue the Policy "states only that claims 'such as' loss of care or services and negligent infliction of emotional distress that derive from an occupant are excluded. That the policy only excludes two such claims ('loss of care or services and negligent infliction of emotional distress') should not foreclose other claims." This is so, they say, because "Under well recognized rules of construction, the inclusion of some items but not all is not the exclusion of those not mentioned." (*Ibid.*) The Claimants misconstrue the application of this principle to the language of the Policy presented in this case as it defeats, rather than supports, their argument.

In *Foust, supra,* 29 Cal.App.3d 382, the court construed the following policy language: "'The limit of bodily injury liability stated in the declarations [$25,000/$ 50,000] as applicable to "each person" is the limit of the company's liability for all damages, *including damages for care and loss of services, arising out of bodily injury sustained by one person* as the result of any one occurrence." (*Id.* at p. 387, italics added.) In this context, the *Foust* court observed: "The quoted language permits and includes within damages resulting from bodily injury those damages for care and loss of services. That language . . . shows that any other item of damages which might result from bodily injury is not excluded merely because of express mention of two such items. Under well recognized rules of construction, the inclusion of some items but not all is not the exclusion of those not mentioned."[6] (*Ibid.*)

---

[6] Also relevant to this case given the Claimants' reliance on *Foust* as support for the inclusion of emotional distress within the meaning of "bodily injury," the *Foust* court stated: "[T]he language [also] demonstrates that the policy includes within the scope of

12

In this case, in the context of policy language "*excluding* claims which originate from any injury to occupants of the aircraft, such as loss of care or services, or negligent infliction of emotional distress," the "inclusion of some items but not all" (*Foust, supra*, 29 Cal.App.3d at p. 387) as examples of "claims which originate from any injury to occupants of the aircraft" is "not the exclusion of those not mentioned" (*ibid*.) from the *excluded* claims—meaning other claims not specifically mentioned are still included within the scope of *excluded* claims as long as they are "claims which originate from any injury to occupants of the aircraft."[7] (Italics added.) The words "such as" simply provide notice of a non-exhaustive list of examples. (*Ibid.*; and see *United Servs. Auto Ass'n v. Warner* (1976) 64 Cal.App.3d 957, 962, italics added [construing the words "all damages, *including* damages for care and loss of services, arising out of bodily injury sustained by one person" "it is apparent that the phrase is inclusive rather than exclusive"]; *Bay Cities, supra,* 5 Cal.4th at p. 867 ["reliance on common understanding of language is bedrock"; "[e]qually important are the requirements of reasonableness and context"].) "'[W]here the policy is clear and unequivocal, the only thing the insured may "reasonably expect"'" is the coverage afforded by the plain language of the mutually agreed-upon terms.' (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 4:12, p. 4-3 (rev. # 1, 2009); see *VTN Consolidated, Inc. v.*

---

bodily injury those damages for care and loss of services, thus showing the *company* has adopted an *expanded* definition of bodily injury *within the meaning of their policy*. Such a definition of bodily injury may fairly be interpreted to include accompanying emotional distress." (Italics added.)

[7]    Coverage A applies to "Bodily Injury sustained by any person, excluding all occupants of the aircraft, and excluding claims which originate from any injury to occupants of the aircraft, such as loss of care or services or negligent infliction of emotional distress." To paraphrase *Foust, supra,* 29 Cal.App.3d 382, "The quoted language permits and includes within [*excluded* claims] those [claims which originate from any injury to occupants of the aircraft] for [loss of care or services and negligent infliction of emotional distress]. That language . . . shows that any other [claim] which might [originate from any injury to an occupant of the aircraft] is not excluded merely because of express mention of two such [claims]." (*Id.* at p. 387.)

*Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172] [insurance policy 'must be construed from the language used and . . . where . . . its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties'].)" (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2010) 184 Cal.App.4th 196, 207 (*Carolina Casualty*).)

It is true, as Claimants argue, the Policy could have been written to state Coverage A "exclud[es] claims which originate from any injury to occupants of the aircraft, *including but not limited to* [instead of "such as"] loss of care or services, or negligent infliction of emotional distress. . . ." But the fact that it was not written in precisely this manner (or that the term "bodily injury" is not defined) does not make the provision (Coverage A) ambiguous when read in the context of the Policy as a whole. Nothing justifies interpreting the provision in a manner inconsistent with the plain policy language. (*Carolina Casualty, supra,* 184 Cal.App.4th at p. 207.) Reading the Policy as a whole, we have no doubt an insured would reasonably expect Coverage A to be inapplicable under the circumstances presented here for the simple and straightforward reason that "claims which originate from any injury to occupants of the aircraft"—as the claims at issue here concededly do—are expressly excluded from Coverage A. We agree with the trial court that the Policy language is clear and unequivocal. (*Ibid.*)

For this reason, we need not address the (primarily out-of-state) authorities the Claimants cite to support their argument the term "bodily injury" could be construed to include the mental anguish they suffered. (But see *United Servs. Auto. Ass'n v. Lilly* (1990) 217 Cal.App.3d 1396, 1400-1401 (*Lilly*), construing an automobile liability policy holder, "a policy holder would not ordinarily and reasonably understand the term 'bodily injury' to include a loss of household services or earning capacity or the loss of the 'society, comfort, care and protection' of the deceased. For that reason we rule out any construction of the policy which reads 'bodily injury' as including an injury for which the heirs might recover in a wrongful death action"].) Even assuming bodily injury could be

understood to mean the mental anguish the Claimants suffered, Coverage A is still inapplicable.

We note, however, that an additional "problem with this argument is that it contradicts the [Claimants'] theory of coverage." (*Bank of the West, supra,* 2 Cal.4th at p. 1271.) According to the Claimants, "wrongful death law" supports their claim they are entitled to the full $1 million policy limit because they suffered mental anguish which should be considered "bodily injury." Not only does the Claimants' construction ignore the fact the Coverage A policy language "exclude[es] claims which originate from any injury to occupants of the aircraft"—meaning wrongful death claims are necessarily excluded, but to the extent the Claimants strain to include "other forms of mental anguish" within the meaning of "bodily injury" for the purpose of the $1 million policy limit, the Claimants' effort is further unavailing as "recovery is not available in wrongful death actions for the grief or sorrow attendant upon the death of a loved one." (*Corder v. Corder* (2007) 41 Cal.4th 644, 661-666; *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, citing *Krouse v. Graham* (1977) 19 Cal.3d 59, 72 ["California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action"]; *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720 [recovery for emotional distress—grief and sorrow—is not allowed in wrongful death action; damages are measured by the financial benefits the heirs were receiving at the time of death, those reasonably expected in the future and the monetary equivalent of loss of comfort, society and protection].)

*C. Neither the Application Nor the Binder Created an Ambiguity.*

Citing the Application Smet completed and the initial 60-day binder, the Claimants also argue that, at the time of contracting, a layperson is led to believe that coverage in the amount of $1 million is provided for "bodily injury, excluding occupants," and the "exclusionary liability language . . . was inexistent." Citing *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465 (*E.M.M.I.*), the Claimants argue

15

the insurer thus led the insured to reasonably expect full coverage but then later excluded it without attracting Smet's attention to "the subsequently added exclusionary language."

On the Application, beneath the heading "Liability Coverages (Combined Single Limit)" the following text appears: "I. A) Bodily injury excluding occupants, B) Property Damage, __including C) Passenger Bodily Injury excluding Crew[.]" In a second column across from this text, beneath the heading "Limits of Liability" the blank lines are typed in as follows: "$ 1,000,000 Each Occurrence limited to $ 100,000 each Passenger."

A court "faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy." (*Bank of the West, supra,* 2 Cal.4th at p. 1265; *Atlas Assurance Co. v. McCombs Corp.* (1983) 146 Cal.App.3d 135, 144 ["'Under the objective test of contract formation, a "meeting of the minds" is unnecessary. A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention.' [Citation.]"].)

According to the Claimants, at the time he submitted his Application, the insured would have thought he was obtaining coverage limited to the amount of $100,000 per passenger under Coverage C, while at the same time, believing, in the event his passenger's bodily injuries resulted in death, the policy would provide coverage up to $1 million for all of the passenger's heirs in pursuing wrongful death claim. In this case, we find no ambiguity created by the Application because the construction the Claimants urge is simply not reasonable. (*Bay Cities, supra,* 5 Cal.4th at p. 868.) If anything, the format (including blank spaces) and plain language of the Application only serve to emphasize that a layperson viewing and submitting this Application for Aircraft Liability Insurance would understand he was applying for liability coverage for bodily injuries caused to anyone outside the aircraft he piloted, and that he had the option to either " in clud[e]" or

16

"_ex_ clud[e]" coverage for passengers under Coverage C, but in the event he sought coverage for passengers, that coverage was limited to $100,000 per passenger.

On the 60-day Binder, "Liability Coverages" were set out in a manner consistent with the Application Smet completed as follows: "A) Bodily Injury (Excluding Occupants) and B) Damage to Property and C) Bodily Injury to Passengers (Excluding Crew). Combined Single Limit $1[ million] Each Occurrence but C) Limited to $100,000 Each Passenger, Each Occurrence." Identical language appeared on the Declarations page of the Policy itself

The Declarations page further stated: "The limit of [North American]'s liability against each such coverage shall be as stated herein, subject to all terms of this Policy having reference thereto."

On the first page of the Policy, the insuring agreement expressly provided that, subject to the policy's limits, North American would pay on behalf of its insured "all sums which the Insured shall become legally obligated to pay as compensation for damage because of

A) Bodily Injury sustained by any person, excluding all occupants of the aircraft, and excluding claims which originate from any injury to occupants of the aircraft, such as loss of care or services, or negligent infliction of emotional distress; [(Coverage A)]

B) Damage to property;

C) Bodily Injury sustained by any passenger, excluding the pilot and crew and all persons working upon the aircraft; [(Coverage C)]

Caused by an occurrence arising out of the ownership, or use of the aircraft set out in the Policy. . . ." (Policy emphasis omitted.) In that same introductory paragraph, North American expressly stated it had entered into the insurance agreement in reliance upon the statements made by the Insured in "the Application, a copy of which is attached to and forms a part of this Policy (see Footnote, page 5)[.]" The referenced footnote reads as follows:

17

"FOOTNOTE

"The Insured, having made to [North American] written application, a copy of which is attached hereto, which together with particulars and statements contained therein, it is hereby agreed is the basis of this contract and is to be considered as incorporated herein. However, it should be noted that in the event of conflict between anything appearing in the Application and the terms, conditions, exclusions, and limits(s) of indemnity expressed in the Policy, THE TERMS, CONDITIONS, EXCLUSIONS AND LIMITS OF INDEMNITY EXPRESSED IN THE POLICY SHALL APPLY."[8] (Bold type omitted; remaining emphasis in original.)

"'"'[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.' [Citation.] Thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' [Citation.] The exclusionary clause 'must be conspicuous, plain and clear.'" [Citation.] This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.' [Citation.]" (*E.M.M.I. Inc. v. Zurich American Ins. Co., supra,* 32 Cal.4th at p. 471.)

For the reasons we have explained, we cannot agree with the Claimants that the Application would lead an insured to *reasonably* expect coverage for the wrongful death claims of passengers' heirs given the plain language to the contrary. (*E.M.M.I. Inc. v. Zurich American Ins. Co., supra,* 32 Cal.4th at p. 471.) Moreover, the purported exclusion is contained in the insuring clause of the policy, on the first page of the policy,

---

[8] On the Application, beneath the heading "Liability Coverages (Combined Single Limit)" the following text appears: "I. A) Bodily injury excluding occupants, B) Property Damage, including C) Passenger Bodily Injury excluding Crew[.]" In a second column across from this text, beneath the heading "Limits of Liability" the blank lines are typed in as follows: "$ 1,000,000      Each Occurrence limited to $ 100,000 each Passenger."

18

and the policy further makes clear that in the event of any perceived conflict between the Application and the Policy itself, the Policy controls. (*Haynes, supra,* 32 Cal.4th at p. 1204 ["[A]ny such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson"]; *Atlas Assurance Co. v. McCombs Corp.* (1983) 146 Cal.App.3d 135, 144 ["An ambiguity cannot be based on a strained and grammatically incorrect reading of the policy's terms. [Citation.] The alternative interpretation must be one to which the policy is *reasonably* susceptible"].)

Consequently, because the Claimants' recovery is limited to Coverage C, and recovery under Coverage C is limited to $100,000 per passenger, the trial court's resolution of the opposing summary judgment motions was correct. (*Sarchett v. Blue Shield of Cal.* (1987) 43 Cal.3d 1, 14-15 ["When a court is reviewing claims under an insurance policy, it must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them"].)

To paraphrase *Lilly, supra,* 217 Cal.App.3d 1396, 1402, original italics: "The [Claimants] may recover under the policy only insofar as it covers *their* injuries. But their injuries are included within the policy coverage only because they are founded upon the *legal responsibility* of [North American's] insured for the wrongful death[s] of their relative[s] resulting from the accident." Because North American contracted to pay on Smet's behalf "all sums which [he, as the insured] shall become legally obligated to pay as compensation for damage because of . . . *Bodily Injury* . . . Caused by . . . use of the aircraft" he piloted, and the "[b]odily [i]njury" caused by Smet's use of the aircraft was the death of each Claimant's decedent daughter—each of whom met the policy's definition of passenger, Coverage C and its corresponding "per passenger" limitation of $100,000 necessarily applies--$100,000 on behalf of passenger Rachel Ann Sutton and $100,000 on behalf of passenger Carla Heikkenen.

## *DISPOSITION*

The judgment is affirmed.  North American is to recover its costs on appeal.


                                                          **WOODS, J.**

**We concur:**


**PERLUSS, P. J.**                                     **ZELON, J.**